IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| B.T., by and through his Mother, MARY T.,<br><br>       Plaintiff,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAI'I,<br><br>       Defendant.<br>_____ | Civil No. 08-00356 DAE-BMK |

ORDER GRANTING PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION

On August 11, 2008, this Court heard Plaintiff's Pro Se Motion for Preliminary Injunction. Mary T., appeared at the hearing pro se and on behalf of her son, B.T. Deputy Attorneys General Steve K. Miyasaka and Gary K.H. Kam, appeared at the hearing on behalf of Defendant Department of Education of the State of Hawai'i ("DOE"). After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Plaintiff's Motion and ORDERS DOE to continue payments to the Heartspring School on B.T.'s behalf until the pending administrative proceedings are complete, this case is resolved, B.T. turns 21 years old, or by further order of this Court, whichever comes sooner.

## BACKGROUND

This matter concerns DOE's obligation under the Individuals with Disabilities Educational Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., to provide free appropriate public education ("FAPE") to Plaintiff B.T., a severely disabled, 20-year-old autistic man.  A Honolulu native, B.T. attended various public and private schools in Hawai'i while growing up.  Since May 2005, however, B.T. has attended Heartspring (the "Kansas School"), a private special needs facility, in Wichita, Kansas.  DOE has borne the cost of this schooling pursuant to B.T.'s individualized education plan ("IEP") under the IDEA.  At issue here is whether DOE is obligated to continue funding B.T.'s placement at the Kansas School despite the fact that B.T. allegedly "aged out" of such services as of July 4, 2008, the date of his twentieth birthday.

The dispute between DOE and B.T.'s mother, Mary T. ("Plaintiff"), regarding the special education services provided to B.T. extends over a decade.  The Court, however, confines its discussion to those facts and issues relevant to its immediate determination.

On November 15, 2004, Plaintiff filed an administrative challenge to B.T.'s IEP dated July 14, 2004.  At that time, B.T. was attending Loveland Academy, a private special education school in Honolulu, Hawai`i.  On March 15,

2005, a hearings officer ruled that the July 14, 2004 IEP did not provide B.T. with a FAPE and ordered DOE to pay for B.T. to attend the Kansas School for the 2004-2005 school year.

On June 27, 2005, Plaintiff filed an administrative challenge to B.T.'s June 22, 2005 IEP.  On November 14, 2005, a hearings officer found that DOE had offered a FAPE to B.T. for the 2005-2006 school year, which included moving B.T. from the Kansas School to a residential type program on Oahu.  Plaintiff appealed the decision to this Court, which was heard by United States District Judge Helen Gillmor on September 12, 2006.  Judge Gillmor affirmed the hearing officer's determination on March 21, 2007.  Plaintiff appealed Judge Gillmor's decision to the Ninth Circuit Court of Appeals.  On June 25, 2008, the Ninth Circuit dismissed Plaintiff's appeal stating in total as follows: "As counsel agreed at argument, neither an affirmance nor reversal would have any effect.  To decide this case, in the circumstances, would be to render an advisory opinion.  We decline to do so."  (DOE's Ex. 4.)

Prior to the Ninth Circuit's decision, on November 16, 2007, a meeting was held by B.T.'s IEP team.  Plaintiff and her friend, Attorney John Dellera, were present.  DOE asserts that Plaintiff was informed at this meeting that B.T. would "age out" on his twentieth birthday and would not be entitled to

services as of July 4, 2008.[1]  Plaintiff claims that DOE previously informed her that it would provide B.T. special education and related services at the Kansas School through November 2008 and that the issue of future services would be re-considered in October 2008.  Plaintiff believed that B.T. would continue to receive services from DOE in the form of payment to the Kansas School through November 2008.

On February 4, 2008, Plaintiff filed an administrative challenge to the November 16, 2007 IEP.  On March 7, 2008, the parties agreed to continue the pre-hearing until September 4, 2008, because the Ninth Circuit was expected to rule on Plaintiff's appeal regarding a FAPE for the 2005-2006 school year and this ruling might dispose of the issues in the administrative challenge.  Instead, as set forth above, the Ninth Circuit dismissed Plaintiff's appeal.

On June 30, 2008, DOE held a meeting to discuss B.T.'s extended school year ("ESY") program for the summer of 2008.  DOE offered B.T. ESY services to address communication, academics, career-life, socialization goals and objectives, speech and occupational therapy, and placement in an adult foster home

---

[1] IDEA defers to the individual states to determine eligibility based on the age of children requiring special education.  Hawaii Administrative Rules, Section 8-56-15 provides that a student must be under the age of 20 upon the first day of instruction for the school year.

with a vocational day program component.  It was also determined that DOE would pay for temporary placement at Loveland Academy, as Plaintiff had placed B.T. there upon his return from the Kansas School instead of at the vocational/ residential facility contained in B.T.'s IEP.  Plaintiff contends that, at this meeting, DOE revoked its prior decision to provide services to B.T. until November 28, 2008, and informed Plaintiff that funding for the Kansas School would be terminated effective July 29, 2008.

On July 2, 2008, Plaintiff filed an administrative complaint pertaining to the June 30, 2008 meeting, alleging that DOE violated B.T.'s due process rights and that DOE was responsible for services to B.T. beyond his twentieth birthday.  Plaintiff additionally sought one year of compensatory education because of DOE's alleged previous violations of B.T.'s rights under the IDEA.  On July 3, 2008, DOE sent Plaintiff a letter informing her that, because B.T. would turn 20 on July 4, 2008, and because this would occur prior to the start of the 2008-2009 academic year, B.T. would be ineligible for special education and related services for the upcoming school year.

On July 8, 2008, DOE sent another letter to Plaintiff, again informing her that B.T. was eligible for services only up to the end of the ESY period for the 2008 summer.  This letter also informed Plaintiff that the first instructional day for

5

the 2008-2009 school year was July 29, 2008, and that B.T. would not be eligible for special education as of this date.

On July 29, 2008, Plaintiff sent a letter to DOE stating that she expected B.T.'s FAPE to continue until the previously agreed upon November 28, 2008 date pursuant to the "stay put" provision of IDEA. This letter also threatened federal action if the DOE failed to comply. DOE responded on August 1, 2008, stating that it believed the "stay put" was inapplicable as B.T. was no longer age-eligible for services. On August 4, 2008, the Kansas School informed Plaintiff that DOE had stopped making payments on July 1, 2008.[2] On August 5, 2008, Plaintiff filed a motion for relief under the "stay put" rule, a hearing on which is scheduled for August 13, 2008.[3]

While the date is unclear, it appears that Plaintiff sent B.T. back to the Kansas School at some point in July 2008, before the end of the ESY period for the summer of 2008. DOE did not pay for B.T.'s airfare to Kansas.

On August 6, 2008, Plaintiff, acting pro se, filed the instant lawsuit on B.T.'s behalf. That same day, Plaintiff filed a Motion for a Temporary

---

[2] As a result of this cancellation, B.T.'s account is nearly $30,000.00 outstanding.

[3] According to DOE, the relief requested in the "stay put" appeal mirrors that which is sought here.

Restraining Order and Preliminary Injunction (Doc. # 4).[4]  This Court granted the TRO on August 6, 2008 (Doc. # 6), and set a hearing date for the instant Motion for Preliminary Injunction on August 11, 2008.  At the hearing, this Court directed DOE to file a certified transcript and audio recording of the November 16, 2007 IEP, which it did on August 13, 2008.

## STANDARD OF REVIEW

To obtain a preliminary injunction, the moving party must demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor." Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007) (citing Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)).  "These two options represent extremes on a single continuum: 'the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor.'" Id. (citing Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003)).

---

[4] Due to the immediacy of the concerns here and in light of Plaintiff's pro se status, the Court construed the August 6, 2008 motion as two separate motions – the first asking for a TRO and the second asking for a preliminary injunction.

An alternative interpretation of the test requires: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Id. (citing Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)). "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985). A district court has great discretion in determining whether to grant or to deny a TRO or preliminary injunction. See Wildwest Institute v. Bull, 472 F.3d 587, 589-90 (9th Cir. 2006).

## DISCUSSION

Plaintiff seeks an order from this Court requiring DOE to continue funding B.T.'s education at the Kansas School until the issue raised in the administrative appeal of whether DOE is obligated to educate B.T. beyond his twentieth birthday is decided. Plaintiff alleges that failing to do so will result in potentially irreversible consequences to B.T.'s well-being.

DOE argues that: (1) B.T. "aged out" on July 4, 2008, and that Plaintiff was appropriately notified; (2) the "stay put" provision does not apply in

this case;[5] (3) there is no evidence of irreparable harm; (4) DOE did not create this situation; and (5) any decision on compensatory education should be deferred.

I.      Likelihood of Success on the Merits/Serious Questions on the Merits

Plaintiff argues that the IDEA requires the State to provide a FAPE beyond B.T.'s twentieth birthday because non-disabled students in certain circumstances may attend regular classes after they turn 20.

The IDEA provides that a FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a). "The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children-- (i) aged . . . 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges[.]" 20 U.S.C. § 1412(a)(1)(B).

Hawaii Administrative Rule ("HAR") § 8-56-15 provides that students qualifying for special education must be "[u]nder twenty on the first instructional day of the school year set by the department. A student who is under

---

[5]The IDEA provides certain safeguards, including "the so-called 'stay-put' provision, which directs that a disabled child 'shall remain in [his or her] then current educational placement' pending completion of any review proceedings, unless the parents and state or local educational agencies otherwise agree." Honig v. Doe, 484 U.S. 305, 308 (1988) (citing 20 U.S.C. § 1415(e)(3)).

twenty years of age on the first instructional day of the school year set by the department, but who reaches the age of twenty during the school year, shall be eligible for the full school year, including extended school year when the requirements of section 8-56-40 are met."

Plaintiff argues that the automatic age bar at 20 years old is inconsistent with State law and therefore, the exception under the IDEA does not apply.  Specifically, a State statute regarding exclusion from school provides that "no child who is eighteen years of age or over shall be admitted to the tenth grade of a public senior high school, except upon the written permission of the superintendent when in the superintendent's opinion the facts warrant admission." Haw. Rev. Stat. § 302A-1134(c).  Another State statute provides that

> instructional programs shall be initiated in the following fields: . . . (3) Secondary education.  A program of secondary education for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education; for those youths who have been excepted from compulsory attendance under section 302A-1132; and for those youths who are in need of courses to complete their high school graduation requirements[.]

Haw. Rev. Stat. § 302A-433.

Defendant asserts that the 20-year-old age bar set for disabled students is consistent with these statutes because under the first statute, the student would

10

not be older than 20 at the end of the twelfth grade. This argument, however, is inaccurate because a student could be 17 at the beginning of the tenth grade and turn 18 within the first week of instruction. That student would therefore turn 20 within the first week of the twelfth grade and be older than 20 at the end of that school year. Furthermore, the statute says nothing of the age for admission for the twelfth grade. There could be circumstances where a student is allowed a semester or year leave of absence due to serious medical issues and then allowed to return to school to complete the twelfth grade, despite the fact that the student is 20 at the beginning of the school year. Moreover, DOE does not address the fact that the superintendent has the authority to make exceptions to this rule, including possibly the exception described above. Accordingly, a strict age limit for disabled students without any room for exceptions, where such room is provided for non-disabled students, shows that the 20-year-old age limit is not consistent with state law, and therefore, the IDEA's age provision of 21 years old applies.

Similarly, Defendant's argument that the second statute cannot be used as a comparison because it focuses on adults, rather than children, which is the focus of the IDEA, is unpersuasive. The IDEA clearly provides that a FAPE must be provided to persons until they are 21 years of age, and makes no difference

between those who are only 19, referring to them as children and those who are over 20, referring to them as adults.

Finally, DOE next argues that pursuant to Hawaii Revised Statute § 91-7, Plaintiff's remedy is to file a declaratory action in State court.[6] Although that avenue of relief is certainly a remedy which Plaintiff may seek, it is not an exclusive remedy. Moreover, DOE does not assert that Plaintiff has failed to exhaust her administrative remedies. However, even if DOE had made such an argument, the Supreme Court has held that while administrative exhaustion is normally required, "parents may bypass the administrative process where exhaustion would be futile or inadequate." Honig, 484 U.S. at 327; see also, Doe By and Through Brockhuis v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir. 1997) ("exhaustion is not required if it would be futile or offer inadequate relief, or if the agency 'has adopted a policy or pursued a practice of general applicability that is contrary to the law'") (citations omitted); Porter v. Bd. of Trustees of

---

[6] Haw. Rev. Stat. § 91-7, provides that "(a) Any interested person may obtain a judicial declaration as to the validity of an agency rule as provided in subsection (b) herein by bringing an action against the agency in the circuit court of the county in which petitioner resides or has its principal place of business. The action may be maintained whether or not petitioner has first requested the agency to pass upon the validity of the rule in question."

Manhattan Beach Unified School Dist., 307 F.3d 1064, 1066 (9th Cir. 2002) (same).

Here, Plaintiff has two administrative proceedings currently pending. However, that process is long and at the time Plaintiff filed the instant suit, DOE had already cut-off funding to the Kansas School and they had informed Plaintiff that B.T. would be on a plane to Hawaii in a matter of days. Thus, the administrative process would have been futile or inadequate in the instant case as a decision would not have been able to be made prior to the disruption of B.T.'s routine. In addition, Plaintiff has asserted that the DOE has adopted a policy of general applicability that is contrary to the law. Therefore, Plaintiff was not required to exhaust her administrative remedies.

For these reasons, Plaintiff is likely to succeed on the merits of the claim that the State must provide a FAPE until B.T. reaches 21 years of age.[7]

II.     Possibility of Irreparable Injury

Plaintiff has provided evidence that B.T. is disabled by autism. Plaintiff has also shown that although B.T. may be ready to make a transition soon,

---

[7]Because this Court finds that Plaintiff is likely to succeed on the merits for the reasons set forth above, it will not consider Plaintiff's argument that B.T. is entitled to compensatory education or her contention that the put" provisions apply. This Court notes that those issues are pending in administrative proceedings.

in the past, disruptions to his routine have caused set backs.  Plaintiff has also shown that she is not prepared for him to return to Hawaii and does not have a place for him to go to be cared for as needed.

DOE asserts that Plaintiff should not be surprised that B.T. "aged out" on his twentieth birthday in July 2008, as she was informed of such back in November 2007.  DOE therefore, argues that Plaintiff created the "dire situation" herself.  This Court disagrees.

This Court reviewed the transcript of the November 16, 2007 IEP meeting and finds that it was not made clear that B.T. would not be allowed to start the school year and that funding to the Kansas School would be cutoff shortly after B.T. turned 20 in the summer.  Indeed, the conversation at the meeting focused almost entirely on where to place B.T. when he came to Hawaii during the holiday break in December 2007.  The quotes below set forth the only points during the meeting where anything possibly relating to aging out was discussed. The first quote set forth below shows that the Kansas School representative stated B.T. would "age out" at 21 (not 20) and therefore, Plaintiff should consider placing B.T. at a setting that he may use after he aged out so that he could get accustomed to it.

> HEARTSPRING REPRESENTATIVE:  You don't have to put him in that setting. . . . That's just a suggestion that the DOE made, . . . that it would be good for him to experience that kind

of structure in a setting outside of Heartspring for any number of reasons.  Not the least of which is given his age, he's going to be going to an adult facility soon, and we do all need to know how he is going to cope with that if we're ever going to plan to transition him from Heartspring.  And he won't be able to stay here forever because he is going to turn 21.
MARY _____: Well, we're aware of that.  I'm certainly aware of that.  And I'm in contact with various states, not only Hawaii, looking at options, including Kansas and California and various states, so I'm well aware of that, Shelby.

     \*    \*    \*

MALE UNIDENTIFIED SPEAKER: That may not be for another year or two. [B.T.] is 19, and it may not be in the immediate future.  So I think we need to focus on what is going to happen on December 20 without putting it together with a permanent placement.
MALE UNIDENTIFIED SPEAKER: One question that I just had, John, you stated that he's not going to be ending his educational career as of this summer?
MALE UNIDENTIFIED SPEAKER: I have no reason to believe that he will.
MALE UNIDENTIFIED SPEAKER: He will be 20 years old in July.  So my understanding, according to Chapter 56, is that he would be finished with Educational Services and he would move on to Adult Services.
MALE UNIDENTIFIED SPEAKER: I don't know.  You know, this compensatory education, sometimes these kids remain in their educational placement until they're 23.  It depends.
MALE UNIDENTIFIED SPEAKER: In other states, there are a lot of other options (inaudible).
MALE UNIDENTIFIED SPEAKER: But that's not the issue that we're talking about right now; we're talking about what we're going to do in three weeks.

The above conversation is insufficient to establish that Plaintiff was made aware in November 2007 that B.T. would "age out" in July 2008. Further, it does not comply with the written notice requirement set forth in the IDEA.

DOE next asserts that Plaintiff made a unilateral decision to send Plaintiff back to the Kansas School in July of 2008. However, both parties have also presented evidence that when the Kansas School was on break, B.T. would return to Hawaii and be cared for through the ESY program and then return to the Kansas School. In addition, Plaintiff also presented evidence that the Kansas School provided a chaperone for the travel in the past as B. T. is incapable of traveling on his own.

DOE has shown that Plaintiff was informed by letter dated July 3, 2008, that B.T. would not be eligible for special education and related services for the 2008-2009 school year because he would by twenty on July 4, 2008, and that services would cease on July 29, 2008. DOE also informed Plaintiff that if she sent B.T. to the Kansas School, it would be at her own expense. Although this reflects poorly on Plaintiff if she sent B.T. back to the Kansas School knowing he would be considered to "age out" prior to the school year beginning, it does not lessen the impact to B.T. if he were now to leave the Kansas School, having presumably started the school year. In other words, it does not lessen the

possibility of irreparable harm that B.T. may suffer if he were to be pulled out of his normal routine and placed in Hawaii while the administrative challenges are pending.  For these reasons, this Court finds that Plaintiff has shown the possibility of irreparable harm and is entitled to a preliminary injunction.

The Supreme Court has upheld the granting of a preliminary injunction in a similar situation.  In Honig, the plaintiff brought suit under a previous version of the IDEA, after protesting by letter his suspensions and a proposed expulsion from school due to his dangerous tendencies, which occurred because of his disabilities.  The Supreme Court found that the district court's injunction which enjoined

> the state and local defendants from indefinitely
> suspending respondent or otherwise unilaterally altering
> his then current placement, properly balanced
> respondent's interest in receiving a free appropriate
> public education in accordance with the procedures and
> requirements of the EHA against the interests of the state
> and local school officials in maintaining a safe learning
> environment for all their students.

Honig, 484 U.S. at 328.

Accordingly, this Court GRANTS Plaintiff's motion.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for a preliminary injunction and ORDERS DOE to continue payments to the Heartspring School on B.T.'s behalf until the pending administrative proceedings are complete, this case is resolved, B.T. turns 21 years old, or by further order of this Court, whichever comes sooner.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, August 21, 2008.



_____
David Alan Ezra
United States District Judge

B.T., et al. vs. Department of Education, State of Hawai`i, CV No. 08-00356 DAE-BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER