IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| B.T., by and through his Mother, MARY T., | ) ) ) | CV. NO. 08-00356 DAE-BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S COUNTER-MOTION FOR
SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S
COUNTER-MOTION TO AMEND RULE 16 SCHEDULING ORDER

On June 26, 2009, the Court heard Defendant's Motion for Summary

Judgment, Defendant's Motion to Strike Plaintiff's Counter-Motion for Summary

Judgment, and Plaintiff's Counter-Motion to Amend the Rule 16 Scheduling

Order. John Dellera, Esq., appeared at the hearing on behalf of Plaintiff Mary T.

and Gary K.H. Kam, Esq., appeared at the hearing on behalf of Defendant

Department of Education, State of Hawaii. After reviewing the motions and the

supporting and opposing memoranda, the Court **GRANTS IN PART and**

**DENIES IN PART** Defendant's Motion for Summary Judgment, **GRANTS**

Defendant's Motion to Strike Plaintiff's Counter-Motion for Summary Judgment, and **DENIES** Plaintiff's Counter-Motion to Amend the Rule 16 Scheduling Order.

<u>BACKGROUND</u>

This matter concerns DOE's obligation under the Individuals with Disabilities Educational Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., to provide a free appropriate public education ("FAPE") to Plaintiff B.T., a severely disabled, 20-year-old autistic man.  B.T. was born in Honolulu on July 4, 1988, and attended various public and private schools in Hawaii during childhood.  In May 2005, B.T. began attending Heartspring ("Kansas School"), a private special needs facility, in Wichita, Kansas.  DOE paid the costs of this schooling pursuant to B.T.'s individualized education plan ("IEP") under the IDEA.

On June 27, 2005, Plaintiff filed an administrative challenge to B.T.'s June 22, 2005 IEP.  On November 14, 2005, a hearings officer found that DOE had offered a FAPE to B.T. for the 2005-2006 school year, which included moving B.T. from the Kansas School to a residential type program on Oahu.  Plaintiff appealed the decision to this Court, which was heard by United States District Judge Helen Gillmor on September 12, 2006.  Judge Gillmor affirmed the hearing officer's determination on March 21, 2007.  Plaintiff appealed Judge Gillmor's decision to the Ninth Circuit Court of Appeals.  On June 25, 2008, the Ninth

Circuit dismissed Plaintiff's appeal stating in total: "As counsel agreed at argument, neither an affirmance nor reversal would have any effect.  To decide this case, in the circumstances, would be to render an advisory opinion.  We decline to do so."

Prior to the Ninth Circuit's decision, on November 16, 2007, a meeting was held by B.T.'s IEP team.  DOE asserts that Plaintiff was informed at this meeting that B.T. would "age out" on his twentieth birthday and would not be entitled to services as of July 4, 2008.[1]  Plaintiff claims that DOE previously informed her that B.T. would be provided special education and related services at the Kansas School through November 2008 and that the issue of future services would be re-considered in October 2008.

On February 4, 2008, Plaintiff filed an administrative challenge to the November 16, 2007 IEP.  On March 7, 2008, the parties agreed to continue the pre-hearing until September 4, 2008, because the Ninth Circuit was expected to rule on Plaintiff's appeal regarding a FAPE for the 2005-2006 school year and this ruling

---

[1]  IDEA defers to the individual states to determine eligibility based on the age of children requiring special education.  Hawaii Administrative Rules, Section 8-56-15 provides that a student must be under the age of 20 upon the first day of instruction for the school year.

might dispose of the issues in the administrative challenge.  Instead, as set forth

above, the Ninth Circuit dismissed Plaintiff's appeal.

On June 30, 2008, DOE held a meeting to discuss B.T.'s extended

school year ("ESY") program for the summer of 2008.  DOE offered B.T. ESY

services to address communication, academics, career-life, socialization goals and

objectives, speech and occupational therapy, and placement in an adult foster home

with a vocational day program component.  It was also determined that DOE

would pay for temporary placement at Loveland Academy, as Plaintiff had placed

B.T. there upon his return from the Kansas School instead of at the vocational/

residential facility contained in B.T.'s IEP.  Plaintiff contends that, at this meeting,

DOE revoked its prior decision to provide services to B.T. until November 28,

2008, and informed Plaintiff that funding for the Kansas School would be

terminated effective July 29, 2008.

On July 2, 2008, Plaintiff filed an administrative complaint pertaining

to the June 30, 2008 meeting, alleging that DOE violated B.T.'s due process rights

and that DOE was responsible for services to B.T. beyond his twentieth birthday.

Plaintiff additionally sought one year of compensatory education because of

DOE's alleged previous violations of B.T.'s rights under the IDEA.  On July 3,

2008, DOE sent Plaintiff a letter informing her that, because B.T. would turn 20 on

4

July 4, 2008, and because this would occur prior to the start of the 2008-2009 academic year, B.T. would be ineligible for special education and related services for the upcoming school year.

On July 8, 2008, DOE sent another letter to Plaintiff, again informing her that B.T. was eligible for services only up to the end of the ESY period for the 2008 summer. This letter also informed Plaintiff that the first instructional day for the 2008-2009 school year was July 29, 2008, and that B.T. would not be eligible for special education as of this date.

On July 29, 2008, Plaintiff sent a letter to DOE stating that she expected B.T.'s FAPE to continue until the previously agreed upon November 28, 2008 date pursuant to the "stay put" provision of IDEA. This letter also threatened federal action if DOE failed to comply. DOE responded on August 1, 2008, stating that it believed the "stay put" provision was inapplicable as B.T. was no longer age-eligible for services. On August 4, 2008, the Kansas School informed Plaintiff that DOE had stopped making payments on July 1, 2008. On August 5, 2008, Plaintiff filed a motion for relief under the "stay put" rule, a hearing on which was scheduled for August 13, 2008.[2]

---

[2] According to DOE, the relief requested in the "stay put" appeal mirrors that which is sought here.

5

On August 6, 2008, Plaintiff, acting pro se, filed a lawsuit on B.T.'s behalf.  That same day, Plaintiff also filed a Motion for a Temporary Restraining Order and Preliminary Injunction.  This Court granted the TRO on August 6, 2008.  This Court then granted the motion for a preliminary injunction on August 21, 2008, and ordered the DOE to continue payments to the Kansas School until the pending administrative proceedings were completed, the case was resolved, B.T. turned 21 years old, or by further order of the Court, whichever occurred first.  The preliminary injunction was modified to limit the DOE's obligation to pay for the Kansas School until November 30, 2008.  On November 18, 2008, the preliminary injunction was modified again.  In that order, this Court ordered DOE to continue payments to the Kansas School on B.T.'s behalf until December 19, 2008, at which time DOE was ordered to transport B.T. back to Hawaii and place B.T. for half-day schedule at Loveland Academy until a decision was rendered in the administrative hearing or until a decision was rendered on the instant motion, whichever occurred first.[3]

---

[3] This Court learned in DOE's opposition papers and in the hearing on this matter that B.T. had been transported back to Hawaii as of late November and is receiving half-day supervision at Loveland.  This does not change the imperative of this Court's Order of November 18, 2008, that DOE pay for B.T.'s education and related services until such a time as noted by this Court.

On November 5, 2008, Plaintiff filed a Motion for Summary Judgment.  (Doc. # 44.)  On December 16, 2008, this Court denied the Plaintiff's Motion for Summary Judgment, finding that a genuine issue of material fact remained as to the existence of a State "practice" or policy of enrollment of students age 20 or older and, if such a policy exists, the nature and scope of that practice.  (Doc. # 54.)

The Rule 16 Scheduling Conference was held on January 8, 2009. The dispositive motion deadline was set at May 6, 2009, the discovery deadline at August 7, 2009, and the trial date at October 6, 2009.  On May 6, 2009, Defendant filed a Motion for Summary Judgment.  (Doc. # 65.)  On May 26, 2009, Plaintiff filed a Counter-motion for Summary Judgment.  (Doc. # 69.)  On June 2, 2009, Defendant filed a Motion to Strike Plaintiff's Counter-motion.  (Doc. # 75.)  On June 8, 2009, Plaintiff filed a Counter-motion to Amend Rule 16 Scheduling Order and Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's Counter-motion for Summary Judgment.  (Doc. # 80.)  On June 10, 2009, Defendant filed a Memorandum in Opposition to Plaintiff's Counter-motion to Amend 16 Scheduling Conference Order and Reply Memorandum in Support of Defendant's Motion to Strike Plaintiff's Counter-motion for Summary Judgment.

(Doc. # 81.)  Lastly, on June 15, 2009, Plaintiff filed a Reply Memorandum in Support of Counter-motion to Amend Rule 16 Scheduling Order.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party. Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage. Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

This Order considers three Motions and will discuss each in turn.

I. Defendant's Motion for Summary Judgment

A. Whether Defendant Violated the IDEA

The IDEA provides that FAPE "is available to all children with

disabilities residing in the State between the ages of 3 and 21, inclusive[.]"  20

U.S.C. § 1412(a).  "The obligation to make a [FAPE] available to all children with

disabilities does not apply with respect to children-- (i) aged . . . 18 through 21 in a

State to the extent that its application to those children would be inconsistent with

State law or practice, or the order of any court, respecting the provision of public

education to children in those age ranges[.]" 20 U.S.C. § 1412(a)(1)(B)(emphasis

10

added).  The issue then becomes what, by law and in fact, is the State policy regarding the provision of FAPE to students 18 to 21 years old.

    1. State Law

    This Court has already addressed the question of State law for the provision of FAPE to students 18 to 21 years old in the Order Denying Plaintiff's Motion for Summary Judgment.  (Doc. # 54.)  There, this Court found that there is no consistent age restriction for general education students under Hawaii law and so the exception provided in the IDEA does not apply.

    In so holding, this Court found that although Haw. Admin. R. § 8-56-15 ("Administrative Rule") prohibits disabled children from continuing special education services after reaching the age of 20, there was no such prohibition for general education students.[4]  Instead, for general education pupils, Haw. Rev. Stat. § 302A-1134(c) ("Statute") prohibits students 18 years old or older from entering the 10th grade – but is silent with regard to age limits to the 12th grade.[5]  As Plaintiff

_____

    [4]  Hawaii Administrative Rule § 8-56-15 provides that disabled students qualifying for special education must be "[u]nder twenty on the first instructional day of the school year set by the department."

    [5]  Haw. Rev. Stat. § 302A-1134(c) states that "no child who is eighteen years of age or over shall be admitted to the tenth grade of a public senior high school, except upon the written permission of the superintendent when in the superintendent's opinion the facts warrant admission."

points out, by establishing age limits for the ninth and tenth grades, the statute implies there are no additional limits when a student reaches the eleventh or twelfth grade.  See Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 951 P.2d 487, 505 (D. Haw. 1998) (stating, "This court has consistently applied the rule of *expressio unius est exclusio alterius* – the express inclusion of a provision of a statute implies the exclusion of another – in interpreting statutes.").

Moreover, the Statute states that even if a general education student is overage, he or she may still be admitted with the permission of the school's principal.  This exception is not, by law, available to special education students. Defendant argues that although there is no provision for the admittance of overage special education students, such students are admitted as a matter of practice.[6]  But this argument does little to clarify what the law in Hawaii is regarding the provision of FAPE to those 18 through 21.

Defendant attempts to clarify exactly what Hawaii's admission policy is by pointing to 4145.1 of the School Code that states that a student will be "overage" for the 12th grade at 20 years old, which applies to both general and special education students.[7]  Yet even that provision allows for exceptions when an

---

[6]   This argument is more fully addressed below, in Section I(A)(2).

[7] 4145.1 of the School Code provides, "1. An overage student shall be given an

overage student shows "seriousness of purpose and the ability to profit from further schooling."[8]  Such vague guidelines do not give this Court – or schools, principals, and students – much guidance as to under what circumstances an overage student would be admitted or rejected to attend a public high school.  This motley crew of codes, rules and statutory provisions, when cobbled together, resemble a purely ad hoc, discretionary system leaving very much in doubt whether Hawaii is fulfilling its obligations under the IDEA.

The State is only allowed to deviate from the requirements of the IDEA if there is a clear State law that says otherwise.  In this case, there is no such law, and thus, Hawaii must abide by the IDEA's provision of special education programs for those 18 through 21.[9]  Solely under this analysis, it would appear that

_____

opportunity to enroll in a secondary school when a review of the student's request indicates a seriousness in purpose and the ability to profit from further schooling. 2. A student will be considered overage when the student applies to enter: Grade 9 at age 17; Grade 10 at age 18; Grade 11 at age 19; Grade 12 at age 20."

[8]  Id.

[9]  Where the IDEA age eligibility rule applies, FAPE must be available to "all children with disabilities . . . between the ages of 3 and 21, inclusive." The IDEA does not make clear whether FAPE must be available throughout the 21st year (i.e. until the 22nd birthday) or whether eligibility ends on the 21st birthday. This Court finds the reasoning by the Second Circuit in St. Johnsbury Academy v. D.H., 240 F.3d 163 (2nd Cir. 2001) persuasive that "[i]f the word 'inclusive' is to mean something, as it must, it means that the relevant period begins on a child's third birthday and ends on the last day of his 21st year (which culminates in his 22nd birthday)." Id. at 168.  Thus, B.T. is eligible for services until his 22nd birthday.

13

Defendant should be denied summary judgment.  The IDEA exception clause, however, does not rely solely on State law; this Court must also look at State practice.  If Defendant's practice is to not admit general education students who are 20 years old at the start of the school year, then the IDEA would be inconsistent with State practice and IDEA would not apply.

2. State Practice

Defendant has submitted 45 declarations from principals of public high schools stating that Defendant's practice is to require overage general education and special education eligible students to obtain the permission of the principal to attend school.  In addition, Defendant has submitted the declaration of Gary Sanehira, Data Processing Analyst, showing the number of public school students who turned 20 before the start of the school year in the following years:

2008-2009: 0 general, 3 special (including B.T.)

2007-2008: 2 general in database (1 actual), 2 special in database (0 actual)

2006-2007: 2 general in database, 3 special in database

2005-2006: 2 general in database (1 actual), 10 special in database (6 actual)

2004-2005: 5 general in database (2 actual), 12 special in database (9 actual)

2003-2004: 7 general in database (2 actual), 8 special in database (6 actual)

2002-2003: 3 general in database (2 actual), 5 special in database.

To help put these numbers in context of the greater school population, Defendant also submitted the declaration of Kimo Anderson, State Office Resource Teacher, providing the data of the total number of general education students and special education eligible students who attended public schools during the 2002-2003 to 2008-2009 school years.[10]  In 2007-2008, there were 9,595 general education students in the 12th grade and 1,392 special education students in the same grade (with an additional 196 in grade 31[11]).  In 2008-2009, there were 9,742 general education students in the 12th grade and 1,332 special education students in the same grade (with an additional 182 in grade 31).

The statistical significance of the low enrollment numbers provided by Defendant, however, remains unclear.  Although the amount of overage students granted permission to enter the 12th grade were submitted along with the total number of students attending generally, there has been no submission of how many students requested an exception from a principal to attend public school after turning 20.  In other words, there are no data on how often principals accept or

---

[10]  This Court restricts itself to a discussion of only the 12th grade, for the 2007-2008 and 2008-2009 school years.

[11]  Grade 31 contains special education eligible students (a)who are in the 12th grade but who will not receive a diploma and who continue to receive education services, and (b)who are out of grade level placement but have been placed at a school due to an IEP, hearings officer, or judge.

reject overage students for admission.   This absence is significant because if every single general education student who requests to attend school after turning 20 is admitted, then what constitutes State practice is put into a different light.  For example, although there are only two overage general education students who were admitted for the 2007-2008 school year, which represents only .021% of the total 9,742 12th graders who attended public schools, those two students may represent 100% of those who actually petitioned to attend.

Plaintiff argues that Plaintiff's deposition of Defendant's Rule 30(b)(6) witness on May 27, 2009, disclosed that Defendant has <u>never denied</u> the request of an overage student without disabilities to attend high school, while Plaintiff B.T. and other disabled students have been denied special education solely because they are over 20.[12]  Not only were these special education students denied admittance when general education students received a rubber stamp approval, the special education students and their representatives had to commence legal action to be admitted.

Defendant concedes that many of the overage special education students who were admitted were the result of settlements between Defendant and

---

[12]  Defendant has not rebutted, either in the briefings or at the hearing on June 26, 2009, the claim that an overage general education student has never been denied admission.

the parents or guardians of these students.  Defendant maintains, however, that there were instances when overage special education students were allowed to participate in new programs or allowed by the principal or IEP team to receive additional educational services.  Moreover, Defendant insists that "the reason why an overage student was allowed to attend school is minutia that is not relevant or material to the issues before the Court."  Doc. # 77 at 7.

This Court disagrees.  The nature of the practice of Hawaii's schools toward students 20 years or older is precisely what is at issue in this case.  And if, as seems to be the case, Defendant has approved every single overage general education student and barred almost every single overage special education student without the commencement of legal action, then it suggests a practice much worse than sheer ad hoc discretion.  What emerges is a picture of blatant discrimination in violation of the IDEA and Section 504 of the Rehabilitation Act of 1973.[13]

Furthermore, because the Administrative Rule specifically prohibits overage students from further special education services, the few special education students who are admitted apparently are not provided with individualized

---

[13]  Section 504 states: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

17

education but rather are merely allowed to attend general education instruction. According to the U.S. Supreme Court in its landmark decision in <u>Board of Education v. Rowley</u>, the first case in which the Court examined the precursor to the IDEA, the basic floor of opportunity provided by the IDEA consists of access to specially designed instruction and related services that are individually designed to provide educational benefit to a disabled student.  <u>Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley</u>, 458 U.S. 176 (1982).

The Rowley Court determined that when Congress enacted the IDEA, it primarily sought to make public education available to disabled students, and that implicit in such a purpose was a requirement that the public education be sufficient to confer some educational benefit on the disabled student.  Although Congress did not impose any greater substantive educational standard than is necessary to make access meaningful, a school may not simply abandon these children to the backs of classrooms where the adequacy of instruction is gauged by mere attendance.  By denying special services, Hawaii is denying these students a meaningful education.

This Court wants to be clear, however, that this Court is <u>not</u> saying that in every case, in every instance, Hawaii schools must provide educational services to disabled students through 21 years old.  The IDEA leaves a student's

IEP team with the primary responsibility for developing and implementing educational programs for disabled students and allows IEP teams to provide special education and related services in the manner and location that they consider appropriate.  20 U.S.C.A. § 1414(d).  This Court will not usurp that role in deciding when a student would benefit from more services.  But because Hawaii schools provide education through 21 years old for general education students, it must provide a FAPE for overage special education students when the IEP so recommends.

Defendant's motion for summary judgment, therefore, is DENIED on the first and second claims and the State of Hawaii is enjoined from implementing a per se rule denying special education services based solely on their attaining the age of 20.

B. Whether B.T. Would Be Endangered Without an Injunction

The third claim in Plaintiff's First Amended Complaint was that B.T.'s welfare would be endangered if he was removed from his placement at the Kansas School.  This Court agreed, and issued a temporary restraining order on August 6, 2008, (Doc. # 6.), ordering Defendant to immediately reinstate payments to the Kansas School on B.T.'s behalf.  In November 2008, B.T. was returned to

Hawaii by his mother to enroll in a facility on Oahu.  Thus, the basis for this claim is moot.

Defendant's motion for a summary judgment on this claim is, therefore, GRANTED.

II. Defendant's Motion to Strike Plaintiff's Counter-motion for Summary Judgment and Plaintiff's Counter-motion to Amend the Rule 16 Scheduling Order

Plaintiff argues that it was not until Defendant filed a motion for summary judgment on May 6, 2009, that she obtained the information sought after in her discovery requests and, therefore, was only then able to renew her motion for summary judgment.   This lack of information, Plaintiff argues, constitutes "good cause" in amending the Scheduling Order.

Moreover, Plaintiff continues, Local Rule 7.9 allows counter-motions to be filed along with a party's opposition as long as it relates to the same subject matter of the original motion.  Although Plaintiff concedes that counter-motions filed under LR 7.9 are still subject to the Rule 16 deadline, Plaintiff insists that it had no knowledge of Defendant's Motion for Summary Judgment arguments prior to the motions deadline and, as a result, the counter-motion should not be stricken for untimeliness.

Defendant argues that Plaintiff has known about the deadline for dispositive motions since January 8, 2009, and that Plaintiff has put itself in the position to not have as much information as it would have liked for drafting motions.  Plaintiff did not file for discovery requests until April 22, 2009, knowing that Defendant would have thirty days to respond, as provided for in Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A), and knowing that dispositive motions were due on May 6, 2009.  Given this knowledge, Defendant concludes, Plaintiff cannot now claim due diligence or good cause for amending the Scheduling Order.  Lastly, Defendant points out that if Plaintiff could not meet the dispositive motion deadline due to difficulties in completing discovery, Plaintiff should have sought an extension of that deadline prior to – not almost a month after – its expiration.

Once entered, a scheduling order "control[s] the subsequent course of the action," and may be modified only for "good cause" and with the judge's consent.  Fed. R. Civ. P. 16(e) & (b)(4).  A district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment). The focus of the inquiry, therefore, is upon the moving party's reasons for seeking modification.  "If that party was not diligent, the inquiry would end."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992).

This Court has previously analyzed the interaction between Rule 16 and LR 7.9, and held that a party may not circumvent the dispositive motions deadline by filing a counter-motion under LR 7.9.  If a party was aware of the arguments in the counter-motion before the deadline, it must be diligent and move before the Rule 16 deadline.  <u>See U.S. ex rel. Int'l. Bus. Machs. Corp. v. Hartford Fire Ins. Co.</u>, 112 F. Supp. 2d 1023 (D. Haw. 2000).

In this case, Plaintiff was fully aware of the arguments made in the counter-motion well before agreeing to the deadlines set forth in the scheduling order.  The same arguments between the parties, i.e. whether IDEA's age eligibility rule applies in Hawaii and whether DOE discriminated against B.T., have been set forth since the beginning of this case.  For Plaintiff to claim "no knowledge of an argument made in the original motion" strikes this Court as disingenuous. Moreover, Plaintiff did know, or should have known, what kinds of facts would be necessary to launch a successful motion/counter-motion for summary judgment as early as December 17, 2008, when this Court explicitly told the parties what information would be needed for summary judgment (<u>see</u> Doc. # 54).

Given the foregoing, Plaintiff has failed to show the due diligence necessary to establish good cause for modifying the pretrial scheduling order.  As

22

the Ninth Circuit Court has admonished, a scheduling order "is not a frivolous

piece of paper, idly entered, which can be cavalierly disregarded by counsel

without peril . . . Disregard of the order would undermine the court's ability to

control its docket, disrupt the agreed-upon course of the litigation, and reward the

indolent and the cavalier." Johnson, 975 F.2d at 610.

Thus, because Plaintiff has failed to show good cause, this court

GRANTS Defendant's Motion to Strike Plaintiff's Counter-motion for Summary

Judgment and DENIES Plaintiff's Counter-motion to Amend the Rule 16

Scheduling Order.

III. Rule 56(f) Continuance

In the alternative to granting Plaintiff's Counter-motion for Summary

Judgment, Plaintiff has counter-moved pursuant to Fed. R. Civ. P. 56(f) for a

continuance of Defendant's Motion for Summary Judgment and Plaintiff's

Counter-motion to enable Plaintiff to complete discovery.

Defendant makes the same objections to a continuance as it did to the

Motion to Amend Rule 16 Scheduling Order, and so will not be reproduced here.

As discussed above, Plaintiff has had ample time in which to complete

discovery.  The ill-chosen timing of the Plaintiff in filing discovery requests will

not hold this Court's schedule hostage or disrupt the previously agreed upon course of litigation.  The Motion for a Rule 56(f) Continuance is, therefore, DENIED.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgement, GRANTS Defendant's Motion to Strike Plaintiff's Counter-Motion, and DENIES Plaintiff's Counter-motion to Amend Rule 16 Scheduling Order, or in the alternative a Rule 56(f) Continuance.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 7, 2009.



_____
David Alan Ezra
United States District Judge

B.T. v. Department of Education, CV No. 08-00356 DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S COUNTER-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S COUNTER-MOTION TO AMEND RULE 16 SCHEDULING ORDER