IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| B.T., by and through his Mother, MARY T, <br><br>    Plaintiff, <br><br>   vs. <br><br> DEPARTMENT OF EDUCATION, State of Hawaii, <br><br>    Defendant. | CV. NO. 08-00356 DAE-BMK <br> CV. NO. 09-00059 DAE-BMK |

ORDER: (1) REVERSING IN PART THE ADMINISTRATIVE HEARING OFFICER'S FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION; AND (2) REMANDING TO THE HEARING OFFICER ON THE ISSUE OF COMPENSATORY EDUCATION

On December 14, 2009, the Court heard Plaintiff's appeal of a decision rendered by an administrative hearings officer concerning the appropriateness of a student's individualized education program, concurrently with Plaintiff's motion for summary judgment and Defendant's motion for summary judgment. John Dellera, Esq., appeared at the hearing on behalf of Plaintiff; Steve Miyasaka, Deputy Attorney General, appeared at the hearing on behalf of Defendant. After reviewing the appeal and the supporting and opposing briefs the Court: (1) **REVERSES IN PART** the Hearing Officer's Findings of Fact,

Conclusions of Law and Decision; and (2) **REMANDS** the issue of compensatory education to the Hearing Officer. (Doc. # 121.)

BACKGROUND

The Court has provided a detailed summary of the pertinent facts in this Court's Order filed on December 17, 2009, Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (the "Summary Judgment Order"). (Doc. # 140.) The Court incorporates that summary herein and recounts below additional background information related to disposition of the instant appeal.

In the Summary Judgment Order, this Court granted Plaintiff's motion for summary judgment as to Plaintiff's First Claim for Relief. The Court held that Defendant violated Plaintiff's right to FAPE when Defendant sought to end B.T.'s eligibility based solely on his age. The Court ordered Defendant to comply with the IDEA's requirement to provide services through age 21 because such a rule is in conformity with the State's policy on over age students. The Court also dismissed Plaintiff's Second Claim for Relief.

Plaintiff now appeals the adverse decision from the administrative hearing on Plaintiff's due process complaint. (Opening Br. Ex. A.) The

administrative hearing began on November 20, 2008, continued on November 21 and 24, 2008, and concluded on December 4, 2008.  (Id. at 3.)  On January 14, 2009, Hearing Officer Maile issued his Findings of Fact, Conclusions of Law and Decision.  The following issues to be decided were identified by Hearing Officer Maile:

1. Whether the DOE wrongfully terminated all of B.T.'s individualized educational program services subsequent to July 20, 2008 because B.T. turned 20 years old;
2. Whether the DOE provided proper prior written notice that DOE was terminating special education and related services to B.T. as of July 30, 2008;
3. Whether the residential component of B.T.'s IEP was appropriate; and
4. Whether DOE improperly delegated its primary responsibility to provide educational services to B.T., to the Department of Health, State of Hawaii.

(Id. at 3-4.)  Hearing Office Maile determined that Plaintiff did not prove by a preponderance of the evidence that Defendant improperly terminated IEP special education and related services to B.T. and found Defendant to be the prevailing party.  (Id. at 13.)  Specifically, Hearing Officer Maile concluded that Defendant "ceased providing special education and related services to [B.T.] according to the provisions of HAR § 8-56-15(3)(B)," that Defendant provided adequate notice to Plaintiff that B.T.'s IEP program services would be terminated on July 29, 2009, that the issue of the appropriateness of the residential place proposed by the June

30, 2008 IEP had already been decided, that Defendant had not improperly delegated its responsibilities to the Department of Health, and that Plaintiff did not prove by a preponderance of the evidence that B.T. is entitled to compensatory education. (Id. at 12-13.) Hearing Officer Maile chose to defer to this Court as to appropriate remedies because of this Court's temporary restraining order which required Defendant to continue paying for B.T.'s special education and related services. (Id. at 13.)

## STANDARD OF REVIEW

The IDEA states in part:

> [any party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

When a party files an action challenging an administrative decision under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); see also Ojai

Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993).  The party challenging the administrative decision bears the burden of proof.  See Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Hood v. Encinatas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007).

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."  Ojai Unified Sch. Dist., 4 F.3d at 1471.  District courts have discretion concerning how much deference to give to state educational agencies.  Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  Courts need not follow the traditional test that findings are binding if supported by substantial evidence or even a preponderance of the evidence.  Id.  A court may not, however, simply ignore the administrative findings.  Ojai Unified Sch. Dist., 4 F.3d at 1474.  Given the expertise of the administrative agency and the political decision to vest the initial determination with the agency, deference to the hearing officer is warranted in cases where the officer's findings are "careful and thorough."  Id. (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)); Capistrano v. Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  In the end, district courts are free to determine how much deference to accord decisions of a hearing

officer in light of the circumstances.  County of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).

## DISCUSSION

In Plaintiff's Opening Brief, Plaintiff "specifically appeals from the adverse findings from the hearing officer that Defendant's application of the 'aging-out' provision of HAR § 8-56-15(3)(B) is appropriate and consistent with the IDEA." (Opening Br. at 1-2.)  Plaintiff "also appeals from the denial of compensatory education."[1]  (Id. at 2.)  According to Plaintiff, this claim for compensatory education is "based upon Defendant's failure to provide services required by IDEA and its denial of services in and after 2002."  (Id. at 2.)

Plaintiff submits the following points of argument: (1) that B.T. is entitled to FAPE through age 21 until his 22nd birthday, as argued in Plaintiff's motion for summary judgment; (2) procedural inadequacies resulted in a denial of FAPE because the IEP team members were not knowledgeable about B.T.'s disability, did not develop a program suitable for B.T.'s needs, and did not update the IEP annually; and (3) B.T. is entitled to compensatory education for

---

[1] Because it does not appear that Plaintiff appeals the Hearing Officer's decision that DOE provided notice that services were being terminated, the decision about the appropriateness of B.T.'s residential placement, or the decision about alleged delegation to the Department of Health, Plaintiff has waived these issues.

6

Defendant's failure to update B.T.'s IEP in 2005 and 2006 and for Defendant's interference with implementing the 2007 IEP from November 2007 through June 2008 (a time of seven months).  (Id. at 19-24.)  Plaintiff seeks two additional years of FAPE as compensatory education, to begin from the time B.T. ages out of the system.  (Id. at 24.)

        Defendant submits various responses in its Answering Brief.  First, Defendant argues that all claims filed by Plaintiff for IEPs done prior to July 2, 2006 are barred by the IDEA's statute of limitations.  (Answering Br. at 6.)  Similarly, Defendant argues that claims that arose during B.T.'s "formative years" and other periods are barred by a November 1, 1999 settlement agreement and by the August 3, 2000 Revised Consent Decree in Felix v. Waihee, CV No. 93-00367 DAE.  (Id.)  Second, Defendant asserts that B.T.'s IEP was in fact updated between 2005 and November 2007.  (Id. at 6-7.)  Third, Defendant claims it did not delay implementation of the 2007 IEP.  (Id. at 7.)  Fourth, any allegations of B.T.'s regression should be disregarded because it was not raised at the administrative hearing and is therefore not exhausted.  (Id. at 7-8.)  Fifth, Defendant admits that DOE did end special education to B.T. after July 29, 2009, but notes that an order issued by this Court required Defendant to continue paying for B.T.'s special education and related services.

I.  FAPE Through Age 21

This Court has already ruled that the DOE may not deny FAPE to B.T. simply because B.T. has reached age 20. The Court need not revisit this issue here.

Accordingly, to the extent that Hearing Officer Maile determined that Defendant did not improperly terminate B.T.'s IEP program services once B.T. turned 20 years old, that decision is REVERSED. Defendant may not rely on HAR § 8-56-15(3)(B) to limit B.T.'s services because under State statute and practice, general education students are allowed to continue education beyond age 20 under certain circumstances. The State of Hawaii must comply with the IDEA's provision of special education through age 21 if the IEP team determines that such education is warranted.

II.  Compensatory Education

Plaintiff seeks two years of compensatory education, beginning from the time B.T. ages out of the system. (Opening Br. at 24.) Plaintiff submits various alleged failings on the part of the DOE to justify the request for two years of compensatory education. This compensatory time presumably must be based on events that occurred prior to December 17, 2008, when this Court issued the stay

put order and since which B.T. should have been receiving special education services.[2]

## A. Alleged Failures in the "Formative Years"

Plaintiff requests this Court award compensatory education "based upon Defendant's failure to provide services required by IDEA and its denial of services in and after 2002." (Id. at 2.) Plaintiff also, for reasons not clear to this Court, discusses events that occurred as far back as 1997. In particular, Plaintiff argues that in March 2002, Defendant failed to provide "an adequate crisis plan" which led to an emergency room visit. (Id. at 3.) Plaintiff alleges that in November 2003, a trainer "who had been successful with B.T." was removed "for frivolous reasons," and that disruption had negative consequences on B.T. (Id. at 3.) Plaintiff also mentions without much discussion that Defendant failed to provide adequate services in 1997 and thereafter.[3] (Id. at 23.)

---

[2] B.T. was placed at Heartspring in May 2005 after a Hearing Officer determined that the placement was necessary. (Opening Br. at 3-4). B.T. left Loveland Academy in 2005 because Loveland "did not have a residential treatment program to deal with behavior problems at home." (Id. at 10.) B.T. remained at Heartspring until placed at Loveland Academy again by Mary T. in November 2008.

[3] It is not clear to this Court why Plaintiff brings this allegation about events in 1997 and beyond, as it directly conflicts with Plaintiff's claim that the action is brought pursuant to denial of services in and after 2002.

These particular arguments are barred by a statute of limitations and cannot be heard by this Court at this time. See 34 C.F.R. § 300.507(a)(2). As discussed below, this Court may only hear an appeal of issues that were exhausted before the Hearing Officer. Per the IDEA, issues brought before the Hearing Officer must have occurred (and Plaintiff was or should have been aware of) no more than two years prior. See 20 U.S.C. § 1415(b)(6)(B); 34 C.F.R. § 300.507(a)(2). Plaintiff filed the due process complaint on July 2, 2008, and therefore events that Plaintiff knew about prior to July 2, 2006 are time barred from the administrative hearing and this Court's review. The Court will not, as Plaintiff counsel suggested, use its powers in equity to circumvent the IDEA's requirement that claims must first be exhausted in the administrative hearing.

Therefore, Plaintiff may not now seek remedy for these alleged violations in this Court or before a Hearing Officer.

B.   Alleged Failure to Update the 2005 and 2006 IEPs

Plaintiff alleges that Defendant did not update B.T.'s 2005 IEP until the November 2007 IEP. (Opening Br. at 8.) According to Plaintiff, Heartspring was working off the 2005 IEP for both the 2007-2008 and the 2008-2009 school years because DOE had not given Heartspring permission to implement new goals. (Id. at 8)

According to Plaintiff, in failing to update the 2005 IEP, DOE violated IDEA regulations sections 300.324 and 300.325.  See 34 C.F.R. § 300.324(b)(1)(I) (mandating that a child's IEP be reviewed at least annually); id. § 300.324(b)(1)(ii)(A) (mandating that a child's IEP be revised to address lack of expected progress); id. § 300.325(c) (requiring DOE to retain responsibility for IEPs even when a student attends a private school).  Further, asserts Plaintiff, these failures resulted in the loss of educational opportunity for B.T.

Plaintiff admits that the reason for DOE's withholding of permission was that Mary T. refused to sign the IEP.  (Opening Br. at 8)  Mary T. purportedly refused to sign the IEP because she objected to the change of placement.  (Id. at 8)

In response, Defendant correctly notes that whether the IEP was updated between 2005 and 2007 was not adequately raised below at the administrative hearing.  "[W]hen a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."  Robb v. Bethel Sch. Dist. No. 403, 308 F.3d 1047, 1048 (9th Cir. 2002); see also 20 U.S.C. § 1415(i)(2)(A); J.L. v. Mercer Island School Dist., 575 F.3d 1025, 1038 (9th Cir. 2009); Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298 (9th Cir. 1992).

Here, even Plaintiff's Amended Request for Impartial Due Process Hearing did not allege that DOE had failed to update the IEP between 2005 and 2007. (ROA at 729-33.) Plaintiff instead based the request on DOE's termination of services as of B.T.'s 20th birthday, written notice of termination, placement, and delegation of duty to the Department of Health. Nor did Plaintiff's Closing Brief to the Hearing Officer identify IEP updates as an issue for resolution. (Id. at 802-33.) Plaintiff did not specifically seek relief on this issue.

Further, the Court's review of the administrative record reveals that this issue was not specifically presented to the Hearing Officer for resolution. The Court acknowledges that Plaintiff submitted various exhibits to the Hearing Officer which referred to the 2005 and 2006 IEPs and that certain testimony referred to the 2005 and 2006 IEPs. But the fact that an issue might have been mentioned by a witness during the hearing does not mean that the issues was exhausted as required by law. There does not appear to have been any formal discussion on this matter during the hearing. For instance, Plaintiff submits an isolated question that was posed to Colin Denney, expert in clinical psychology: "What is the importance or risks that would incur if an IEP was not updated for, hypothetically, three years?" (Opening Br. at 12; ROA Tr. at 279-80) (emphasis added). The Court's review of this line of questioning reveals that whether or not B.T.'s IEP was updated between

2005 and 2007 was not at issue and was not asked.  The parties were discussing whether the 2007 IEP had been implemented.

It appears that Plaintiff never actually requested that the Hearing Officer find that the IEPs had not been updated.  Nor is the question of whether the IEP was updated included in Hearing Officer Maile's decision.  Hearing Officer Maile made no findings of fact as to whether the IEP was updated between 2005 and 2007.  Defendant apparently also did not brief the issue during the administrative hearing.  (Answering Br. at 6 n.4.)  There is quite simply insufficient evidence or discussion for this Court to review.  See J.L. v. Mercer Island Sch. Dist., 575 F.3d 1025, 1038 (9th Cir. 2009) (district court lacked subject matter jurisdiction to consider a claim because the plaintiff did not raise the argument in their administrative complaint or due process hearing).

Accordingly, this Court does not have jurisdiction to review whether DOE failed to update the IEP on an annual basis between 2005 and 2007.

C.      Alleged Failure to Implement the November 2007 IEP

Plaintiff next argues that DOE delayed implementation of the November 2007 IEP until June 18, 2008.  (Opening Br. at 4, 8.)  It is not clear from the record before this Court what the cause for this alleged delay was.  Plaintiff

13

attributes this delay partially to Mary T.'s disagreement with a change of placement to Hawaii and Mary T.'s refused to sign off on the new IEP. (Id. at 4.)

Plaintiff requests compensatory education to make up for these seven months in which B.T. did not experience the benefits of the November 2007 IEP. (Id.)

The 2007 IEP was further allegedly frustrated when DOE "prematurely cut off all funding to Heartspring School, effectively ending all IEP services," on July 1, 2008. (Id. at 5.) Hearing Officer Maile found that on or about July 1, 2008, Defendant stopped paying for B.T.'s placement and related services at Heartspring. (Opening Br. Ex. A at 7.) This is apparently done in conjunction with a notification to Mary T. on July 3, 2008 that B.T. would receive ESY services at the "least restrictive environment," which was to be a day program on Oahu. (Id. at 7.)

The Court must remand this issue to the Hearing Officer. It appears that the question of whether the November 2007 IEP was improperly implemented was contemplated along with the question of whether B.T. was entitled to services beyond age 20. The Court has reversed the Hearing Officer's decision regarding termination of services at age 20. It may be that B.T. is entitled to compensatory education due to DOE's alleged failure to implement the November 2007 IEP,

however, the record below is not fully developed because the Hearing Officer was operating under the assumption that the State of Hawaii was entitled to cease services at the age of 20.

    D.    <u>Alleged Regression in B.T.'s Performance</u>

According to Plaintiff, DOE's failure to timely implement the 2007 IEP resulted in regression in B.T.'s progress and lost academic opportunity. (Opening Br. at 20, 23.) John Dreher, a special education teacher who has testified to working with B.T. since 2002, believes B.T. regressed while at Heartspring. (<u>Id.</u> at 8-9.) Dreher states that each time Dreher met with B.T. after 2005, B.T.'s performance had worsened. (<u>Id.</u> at 9.) For instance, the number of words B.T. was familiar with allegedly declined, and his ability to hand-write allegedly declined. (<u>Id.</u> at 20.) Likewise, Patricia Dukes, owner and executive director of Loveland, testified that B.T. "appeared" to have regressed. Dukes' conclusion is based on her observation of B.T. on campus and communications with Loveland staff. (<u>Id.</u> at 11.)

Mary T. purportedly removed Plaintiff unilaterally from Heartland and placed him at Loveland in 2008 because of this regression. (<u>Id.</u> at 20.)

Defendant argues that the issue of regression was not exhausted below in the administrative appeal. After a careful review of the administrative record,

this Court concludes that Plaintiff did sufficiently raise the matter of regression, not as a stand alone issue, but as part of Plaintiff's argument that DOE frustrated B.T.'s placement at Heartspring. B.T.'s "regression" was submitted as evidence to support Plaintiff's allegation that B.T. was denied FAPE by DOE's alleged acts in bad faith relating to the services B.T. received at Heartspring.

Upon reviewing Hearing Officer Maile's decision, however, this Court cannot determine whether Hearing Officer Maile gave this testimony its due weight. The matter of B.T.'s regression was not specifically addressed in Hearing Officer Maile's decision.

E.     Remand to Hearing Officer

Compensatory education may be awarded if FAPE has not been provided. See Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994). There is not, however, an obligation to provide day-for-day compensation. Id.; Park, ex rel. Park v. Anaheim Union High School Dist, 464 F.3d 1025, 1033 (9th Cir. 2006). This is because awarding compensatory education is an equitable remedy within the discretion of the district court to be considered on a fact-specific basis. Parents of Student W., 31 F.3d at 1497; Forest Grove Sch. Dist. v. T.A., 523 F.3d 1078, 1084-85 (9th Cir. 2008). A compensatory education award shall be "designed to ensure that student is

appropriately educated within the meaning of the IDEA." Parents of Student W., 31 F.3d at 1497.

It is now December of 2009, and the particular services that B.T. requires at this point may not be what has been identified in the November 2007 IEP. Moreover, based on information submitted by Defendant in its reply memorandum in support of its motion for summary judgment, it also appears that a new IEP may have been created. (Doc. # 136 at 2.) That IEP, if it exists, is not currently before this Court. The Court, therefore, REMANDS the issue of compensatory education to the Hearing Officer.

The Hearing Officer is directed to consider evidence regarding B.T.'s currents needs, the testimony submitted by Plaintiff regarding B.T.'s alleged "regression" while at Heartland, the current IEP, whether Defendant did indeed fail to implement the November 2007 IEP for reasons other than B.T.'s "aging out," and whether compensatory education would benefit B.T. at this time. When evaluating B.T.'s status, Hearing Officer Maile is directed to take note that the Court has ruled that Defendant may not deny FAPE on the basis of attaining age 20 alone. Hearing Officer Maile must provide a detailed explanation as to why or why not compensatory education is warranted and his reasons for developing a particular compensatory program.

The "stay put" order for B.T.'s education shall remain in effect pending the Court's final disposition of these issues.

## CONCLUSION

For the reasons stated above, the Court: REVERSES IN PART the Hearing Officer's Findings of Fact, Conclusions of Law and Decision; and REMANDS the issue of compensatory education to the Hearing Officer.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 17, 2009.



_____
David Alan Ezra
United States District Judge

B.T. v. Department of Education, CV No. 08-00356 DAE-BMK; CV No. 09-00059 DAE-BMK; ORDER: (1) REVERSING IN PART THE ADMINISTRATIVE HEARING OFFICER'S FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION; AND (2) REMANDING TO THE HEARING OFFICER ON THE ISSUE OF COMPENSATORY EDUCATION