IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| B.T., by and through his Mother, | ) | Civ. No. 08-00356 DAE-BMK |
| Mary T., | ) | Civ. No. 09-00059 DAE-LEK |
| | ) | (Consolidated) |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| vs. | ) | RECOMMENDATION THAT |
| | ) | PLAINTIFF'S MOTION FOR |
| DEPARTMENT OF EDUCATION, | ) | ATTORNEYS' FEES AND |
| State of Hawaii, | ) | RELATED NONTAXABLE |
| | ) | EXPENSES BE GRANTED IN |
| Defendant. | ) | PART AND DENIED IN PART |
| _____ | ) | |

FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES BE
GRANTED IN PART AND DENIED IN PART

Before the Court is Plaintiff's Motion for Attorneys' Fees and Related

Nontaxable Expenses ("Plaintiff's Second Motion for Attorneys' Fees").[1]  (Doc. #

144.)  After careful consideration of Plaintiff's Second Motion for Attorneys' Fees,

the supporting and opposing memoranda, and the attached documentation, the

Court RECOMMENDS that Plaintiff's motion be GRANTED IN PART and

DENIED IN PART.  Specifically, the Court recommends that Plaintiff be awarded

$80,286.50 in attorneys' fees.

_____

[1] Pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United
States District Court for the District of Hawaii ("Local Rules"), the Court elects to
decide this matter without a hearing.

BACKGROUND

The Court repeats the background facts only as is necessary for a recommendation on Plaintiff's Second Motion for Attorneys' Fees in the discussion section below.  This matter arises out of Defendant's obligation under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., to provide a free appropriate public education ("FAPE") to B.T., a severely disabled, autistic man.  (Doc. # 140 at 2.)  In May 2005, B.T. began attending Heartspring, a private special needs facility, in Wichita, Kansas.  (Id.)  Defendant paid for the costs of this schooling pursuant to B.T.'s individualized education plan ("IEP") under the IDEA.  (Id.)  However, during B.T.'s IEP meeting in November 2007, Defendant allegedly informed Plaintiff that B.T. would "age out" on his twentieth birthday, July 4, 2008, and therefore, he would not be entitled to special education and related services ("services") as of that date.  (Id. at 3.)  Later, during a June 30, 2008 meeting between Defendant and Plaintiff, Defendant allegedly informed Plaintiff that payments to Heartspring would be terminated on July 29, 2008.  (Id. at 4.)

On July 2, 2008, Plaintiff filed an administrative complaint pertaining to the June 30, 2008 meeting, alleging that Defendant violated B.T.'s due process rights and that Defendant is responsible to B.T. for services beyond his twentieth

birthday.  (Id. at 4-5.)  Plaintiff also sought one year of compensatory education

due to Defendant's alleged previous violations of B.T.'s rights under the IDEA.

(Id. at 5.)

On July 3 and 8, 2008, Defendant sent Plaintiff letters informing her

that because B.T. would turn twenty years old prior to July 29, 2008, the first

instructional day of the 2008 to 2009 school year, B.T. would be ineligible for

services as of that date.  (Id.)  On August 4, 2008, Heartspring informed Plaintiff

that Defendant stopped making payments to it on July 1, 2008.  (Id.)

I.     Civ. No. 08-00356 DAE-BMK

On August 6, 2008, Plaintiff filed her complaint in Civ. No. 08-00356

DAE-BMK.  (Doc. # 1.)  Plaintiff amended said complaint on August 12, 2008.

(Doc. # 14.)  In her amended complaint, Plaintiff's first claim for relief alleged that

Defendant is obligated to make a FAPE available to children with disabilities

through age twenty-one because it is not inconsistent with the State of Hawaii's

law, practice, or court order, respecting the provision of public education to

children through this age.  (First Am. Compl. ¶ 29.)  Plaintiff's second claim for

relief alleged that Defendant discriminated against B.T. in violation of Section 504

of the Rehabilitation Act of 1973 by denying B.T. services after the age of twenty

solely because of his disability.  (Id. ¶ 33.)  Plaintiff's third claim for relief alleged

that B.T.'s welfare would be endangered if he was removed from Heartspring.  (Id. ¶ 36.)

The same day Plaintiff filed her original complaint, she also filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. # 4.)  Judge David Alan Ezra granted Plaintiff's motion for a TRO on August 6, 2008, and on August 21, 2008, he granted Plaintiff's motion for a preliminary injunction, ordering Defendant to continue making payments to Heartspring.  (Docs. ## 6, 22.)

On May 6, 2009, Defendant filed a Motion for Summary Judgment. (Doc. # 65.)  On May 26, 2009, Plaintiff filed a Counter-motion for Summary Judgment.  (Doc. # 69.)  Defendant filed a Motion to Strike Plaintiff's Counter-motion for Summary Judgment on June 2, 2009.  (Doc. # 75.)  In its Motion to Strike Plaintiff's Counter-motion for Summary Judgment, Defendant argued that Plaintiff's Counter-motion for Summary Judgment was untimely because the Rule 16 Scheduling Order required dispositive motions to be filed by May 6, 2009. (Id. at 2.)  On June 8, 2009, Plaintiff filed, among other things, a Counter-motion to Amend the Rule 16 Scheduling Order ("Counter-motion to Amend"), in which she requested the dispositive motions deadline be extended from May 6, 2009 to May 26, 2009.  (Doc. # 80 at 3.)

By order issued July 7, 2009, Judge Ezra granted Defendant's Motion for Summary Judgment as to Plaintiff's third claim for relief and denied Defendant's Motion for Summary Judgment as to Plaintiff's first and second claims for relief.  (Doc. # 87 at 19, 20.)  Judge Ezra also granted Defendant's Motion to Strike Plaintiff's Counter-motion for Summary Judgment and denied Plaintiff's Counter-motion to Amend.  (Id. at 23.)  Judge Ezra concluded that Plaintiff failed to show the due diligence necessary to establish good cause for amending the Rule 16 Scheduling Order.  (Id. at 22.)

On July 21, 2009, Plaintiff filed a Motion for Attorneys' Fees and Related Nontaxable Expenses ("Plaintiff's First Motion for Attorneys' Fees"). (Doc. # 89.)  Defendant moved to, among other things, strike Plaintiff's motion on the ground that it was premature.  (Doc. # 94 at 2.)  In an order and finding and recommendation issued August 18, 2009, this Court concluded that Plaintiff's First Motion for Attorneys' Fees was premature.  (Doc. # 118 at 5.)  The Court therefore granted Defendant's motion to the extent it requested to strike Plaintiff's First Motion for Attorneys' Fees.  (Id.)  Because the Court struck Plaintiff's motion, the Court recommended that Plaintiff's request for attorneys' fees and nontaxable expenses be denied.  (Id.)  Judge Ezra adopted the Court's recommendation by order issued September 4, 2009.  (Doc. # 119.)

On October 1, 2009, Plaintiff and Defendant both filed Motions for Summary Judgment.  (Docs. ## 122, 124.)  By order issued December 17, 2009 ("Summary Judgment Order"), Judge Ezra granted Plaintiff's motion and denied Defendant's motion as to Plaintiff's first claim for relief.  (Doc # 140 at 22.)  Judge Ezra held that Defendant violated Plaintiff's right to a FAPE when it sought to end B.T.'s eligibility based solely on his age.  (See Doc. # 141 at 2.)  Judge Ezra held, "The Court is not requiring Hawaii schools to provide special education to every student through 21 years of age in every situation.  [However,] Defendant is enjoined from denying special education services based solely on a student's attainment of age 20."  (Doc. # 140 at 22-23 (emphasis omitted).)

As to Plaintiff's second claim for relief, alleging discrimination in violation of Section 504 of the Rehabilitation Act of 1973, Judge Ezra granted Defendant's motion and denied Plaintiff's motion.  (Doc. # 140 at 24.)  Judge Ezra dismissed Plaintiff's second claim for relief on the ground that it "specifically alleged damages, about which Plaintiff now concedes there were none."  (Id. at 23-24.)

II.     Civ. No. 09-00059 DAE-LEK

On February 12, 2009, Plaintiff filed her complaint in Civ. No. 09-

00059 DAE-LEK,[2] appealing the Hearing Officer's Findings of Fact, Conclusions of Law, and Decision ("decision") on her due process complaint.  (Doc. # 141 at 2.)  The Hearing Officer heard Plaintiff's due process complaint in November and December 2008, and on January 14, 2009, he issued his decision.  (Id. at 2-3.)  In his decision, the Hearing Officer concluded that, among other things, Plaintiff did not prove by a preponderance of the evidence that Defendant improperly terminated B.T.'s services.  (Id. at 3.)  The Hearing Officer also concluded that Plaintiff did not prove by a preponderance of the evidence that B.T. is entitled to compensatory education.  (Id. at 4.)

By order issued December 17, 2009 ("Appeal Order"), Judge Ezra reversed the Hearing Officer's decision to the extent it concluded that Defendant did not improperly terminate B.T.'s services when he turned twenty years old.  (Id. at 8.)  Judge Ezra noted that in his Summary Judgment Order issued the same day, he "ruled that [Defendant] may not deny [a] FAPE to B.T. simply because B.T. has reached age 20."  (Id.)  Judge Ezra, however, remanded the issue of compensatory education to the Hearing Officer.  (Id. at 14-15, 17.)  Judge Ezra concluded that B.T. may be entitled to compensatory education due to Defendant's alleged failure to implement B.T.'s November 2007 IEP, but that the particular services B.T.

---

[2] This action was consolidated with Civ. No. 08-00356 DAE-BMK on July 21, 2009.  (Doc. # 88.)

requires at this time may not be what was identified in the November 2007 IEP.

(Id.)  Judge Ezra thus directed the Hearing Officer to evaluate on remand things

including, but not limited to, evidence regarding B.T.'s current needs and whether

compensatory education would benefit B.T. at this time.  (Id.)  Judge Ezra directed

the Hearing Officer to provide a detailed explanation as to whether compensatory

education is warranted and his reasons for developing a particular compensatory

program.  (Id. at 17.)  Judge Ezra directed the Hearing Officer to take note that

when evaluating B.T.'s status, "Defendant may not deny FAPE on the basis of

attaining age 20 alone."  (Id.)  Lastly, Judge Ezra ordered the "stay put" order to

remain in effect pending the Court's final disposition of the issues.  (Id. at 18.)

III.    Plaintiff's Second Motion for Attorneys' Fees

        Judgment was entered pursuant to Judge Ezra's Summary Judgment

and Appeal Orders on January 13, 2010.  (Doc. # 143.)

        On January 27, 2010, Plaintiff filed the instant motion seeking

attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B).  (Doc. # 144.)  Defendant

filed its memorandum in opposition to said motion on February 16, 2010.  (Doc.

# 148.)

## DISCUSSION

I.    Prevailing Party Status

8

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Defendant does not dispute that Plaintiff is the prevailing party in Civ. No. 08-00356 DAE-BMK. (See Opp. at 2.) Defendant, however, contends that as to Civ. No. 09-00059 DAE-BMK, a determination as to prevailing party status is premature as there was "no final decision" in that action. (Id. at 2.) Defendant notes that Judge Ezra's Appeal Order remanded the action to the Hearing Officer for a determination as to compensatory education. (Id. at 5.)

"A prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 825 (9th Cir. 2007) (quoting Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir. 1994)) (alteration in original). The success must create a material alteration of the parties' legal relationship and that alteration must be judicially sanctioned. P.N. v. Seattle Sch. Dist., No. 1, 474 F.3d 1165, 1172 (9th Cir. 2007). Because in this case, Judge Ezra's Appeal Order satisfies the judicial sanction component of the prevailing party definition, the only issue is whether his Appeal Order created a material alteration of the parties' legal relationship. His

9

Appeal Order created a material alteration of the parties' legal relationship if it gave Plaintiff "the ability to 'require[ ] [Defendant] to do something [it] otherwise would not have [had] to do.'"  V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist., 484 F.3d 1230, 1233 (9th Cir. 2007) (quoting Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)) (some alterations in original).  Further, Plaintiff's success must have been more than "'purely technical or de minimis.'"  Id. (quoting Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 374 F.3d 857, 865 (9th Cir. 2004)); see also Parents of Student W., 31 F.3d at 1498 (citation omitted).

The Court concludes that Judge Ezra's Appeal Order created a material alteration of the parties' legal relationship.  As mentioned above, the Appeal Order reversed the Hearing Officer's decision to the extent it determined that Defendant did not improperly terminate B.T.'s services when he turned twenty years old.  (Doc. # 141 at 8.)  The Appeal Order then remanded the issue of compensatory education to the Hearing Officer for a determination as to whether compensatory education is warranted at this time.  (Id. at 17.)  The Appeal Order directed the Hearing Officer to take note that when evaluating B.T.'s status, "Defendant may not deny FAPE on the basis of attaining age 20 alone."  (Id.)  In addition, the Appeal Order stated that the "stay put" order shall remain in effect

pending the Court's final disposition of the issues.  (Id. at 18.)  Because Defendant

must proceed with the administrative hearing on compensatory education, and may

not deny a FAPE solely on the basis of attaining age twenty, the Appeal Order

forced Defendant to do things it "otherwise would not have [had] to do."  V.S., 484

F.3d at 1233.

Further, Plaintiff's success was not purely technical or de minimis.

The Appeal Order reiterated Judge Ezra's Summary Judgment Order ruling that

Defendant "may not deny [a] FAPE to B.T. simply because [he] has reached the

age 20."  (Doc. # 141 at 8.)  The Ninth Circuit reiterated the importance of a denial

of a FAPE in V.S.:

> Nor are the issues on which Appellant[ ] prevailed merely
> technical; rather, they go to the *very essence of the [IDEA]*.
> The determination by the Hearing Officer and the district court
> that [the child] was denied a [FAPE] . . . – even setting aside the
> other issues on which Appellant[ ] prevailed–is the *most
> significant of successes possible under the [IDEA]*.

484 F.3d at 1234 (quoting Park ex rel. Park v. Anaheim Union High Sch. Dist., 464

F.3d 1025, 1036 (9th Cir. 2006) (some alterations in original, emphases added and

omitted); see also Natalie M. v. Dep't of Educ., Civ. No. 06-00539 JMS-BMK, slip

op. at 6-7 (D. Haw. July 19, 2007) ("[A] determination by a Hearings Officer that a

student was denied a FAPE 'is the most significant of successes possible under the

[IDEA].'  By prevailing on the claim [a student] was denied a FAPE, the legal

relationship with Defendant certainly changed.") (citation and footnotes omitted)).

In accordance with the foregoing, there was a material alteration of the parties' legal relationship and such alteration was judicially sanctioned. Accordingly, Plaintiff is the prevailing party in both actions and as such, she is entitled to an award of reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

II.     Attorneys' Fees

To calculate an award of reasonable attorneys' fees in IDEA cases, courts use the lodestar calculation set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983). Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1121 (9th Cir. 2006) (holding that "attorney's fees awarded under 20 U.S.C. § 1415 are governed by the standards set forth by the Supreme Court in Hensley and its progeny"). Under Hensley, the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. Once calculated, the lodestar amount is presumptively reasonable, although it may be subject to adjustment in certain circumstances. Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993); see also Fischer, 214 F.3d at 1119 n.4.

In this case, Plaintiff requests the following lodestar amount:

12

|                     | Hours   | Rate   | Lodestar      |
|---------------------|---------|--------|---------------|
| John P. Dellera     | 189.95  | $350   | $ 66,482.50   |
| Matthew C. Bassett  | 173.10  | $280   | $ 48,468.00   |
|                     |         |        |               |
| Subtotal            |         |        | $114,950.50   |
| Fees waived (travel) |        |        | $     800.00  |
|                     |         | TOTAL  | $114,150.50[3] |

(Mot. at 13; see also Ex. A at 8; Ex. C at 7.)

A.    Number of hours

As to the reasonableness of the number of hours expended, the party

seeking fees bears the burden of proving that such hours were associated with the

relief requested and reasonably necessary to achieve the results obtained.  See

Tirona, 821 F. Supp. at 636.  Here, Plaintiff attached to her motion documentation

itemizing the number of hours expended.  (Exs. A & C.)  Plaintiff asserts that said

hours were reasonably necessary to litigate both actions.  (See Dellera Decl. ¶ 6;

Bassett Decl. ¶ 16.)

Defendant objects to the number of hours requested on the grounds

that it contains (1) improper duplicate billings and (2) time spent on counter-

motions and a motion that were either struck or denied.  (Opp. at 2-5, 10-12.)  The

Court addresses Defendant's objections in turn.

---

[3] Plaintiff erroneously submitted a lodestar calculation of $114,150.00.
(Mot. at 13.)

1.    <u>Improper duplicate billings</u>

Defendant argues that Plaintiff's request contains improper duplicate

billings because Dellera and Bassett both billed for time spent conferring with each

other.  (<u>Id.</u> at 2-3, 10.)  Plaintiff argues that such time is compensable because it

"was necessary and reasonable to coordinate pending matters and to develop a

consistent strategy."  (Reply at 9.)  Plaintiff also argues that Local Rule

LR 54.3(d)(1) "implies that 'routine communications' with co-counsel are

compensable because they are specified as one of the categories of time that must

be itemized."  (<u>Id.</u>)

While Local Rule LR 54.3(d)(1) specifies that routine

communications with co-counsel are to be included in the descriptions of work

performed by each attorney, Local Rule LR 54.3(d)(1) does not address whether an

attorney and co-counsel may ***both*** be compensated for such communications.  This

Court has, on several occasions, noted, "'[T]he general rule is that two

professionals cannot bill for the same meeting.'"  <u>Melodee H. v. Dep't of Educ.</u>,

Civ. No. 07-00256 HG-LEK, 2008 WL 4344701, at *12 (D. Haw. Sept. 23, 2008)

(quoting <u>Alicia F. v. Dep't of Educ.</u>, Civ. No. 06-00268 HG-BMK, slip op. at 9 (D.

Haw. Feb. 21, 2007)).  Thus, this Court has in other IDEA cases "deducted

duplicative time when the plaintiffs' counsel met with each other or with their

support staff." Id.; Brandon E. v. Dep't of Educ., Civ. No. 07-00536 ACK-LEK, slip op. at 21-22 (D. Haw. Sept. 4, 2008); see also Loveland Academy, LLC v. Hamamoto, Civ. No. 02-00693 HG-LEK, 2008 WL 3523895, at *11 (D. Haw. Aug. 13, 2008).

Based on the foregoing, the Court concludes that Plaintiff cannot be compensated for both Dellera's and Bassett's time spent conferring with each other. The Court therefore recommends that Bassett's time spent conferring with Dellera be deducted. After reviewing Bassett's billing entries for such time, the Court finds that three of the entries also include time for other work performed. Because the Court is unable to apportion Bassett's time spent conferring with Dellera from that, which was spent on other work, the Court recommends that all time be excluded. See A.F. v. Hamamoto, Civ. No. 07-00278 JMS-KSC, 2008 WL 148909, at *5 (D. Haw. Jan. 16, 2008) (holding that because the court is unable to apportion the billing entries between time that is compensable from that, which is not, all of the time will be excluded). Accordingly, the Court RECOMMENDS that Bassett's hours be reduced by 6.3 hours.[4]

2.      Time spent on counter-motions and a motion that were either struck or denied

---

[4] 1.0 (4/10/09) + 0.3 (5/6/09) + 0.8 (5/7/09) + 1.0 (5/13/09) + 0.5 (5/21/09) + 1.2 (5/28/09) + 0.5 (6/12/09) + 0.5 (7/2/09) + 0.5 (7/8/09) = 6.3. (Ex. C at 4-6.)

Defendant argues that Plaintiff should not be awarded attorneys' fees for time that was spent on her Counter-motion for Summary Judgment, Counter-motion to Amend, and First Motion for Attorneys' Fees.  (Opp. at 3-5, 11-12.) Defendant argues that Plaintiff may be awarded attorneys' fees only for work that "contribute[d] to the ultimate victory in the lawsuit."  (Id. at 11 (citing Cabrales v. County of Los Angeles, 935 F.2d 1050 (9th Cir. 1991).)  Defendant argues that the aforementioned counter-motions and motion did not contribute to Plaintiff's ultimate victory in the lawsuit as they were either struck or denied.  (Id. at 11-12.)

Plaintiff argues that the time spent on her Counter-motion for Summary Judgment (Doc. # 69) contributed to her ultimate victory in the lawsuit as she included its statement of facts, arguments, and exhibits in her Motion for Summary Judgment filed October 1, 2009 (Doc. # 122), which Judge Ezra granted in part in his Summary Judgment Order.  (Reply at 10.)  After reviewing Plaintiff's Counter-motion for Summary Judgment, the Court finds that Plaintiff incorporated portions of it into her Motion for Summary Judgment.  The Court therefore concludes that Plaintiff may be compensated for some, but not all, of the time spent on her Counter-motion for Summary Judgment as such time contributed to her ultimate victory in the lawsuit.  See Cabrales, 935 F.2d at 1052 (noting that the general rule is that "plaintiffs are to be compensated for attorney's fees incurred for

services that contribute to the ultimate victory in the lawsuit").  Accordingly, the Court recommends a reduction in the number of hours billed for Plaintiff's Counter-motion for Summary Judgment.  Dellera's and Bassett's billing entries for such time total 43.75[5] and 6.8[6] hours, respectively.  However, many of said billing entries also include time spent opposing Defendant's Motion for Summary Judgment.  Because the Court is unable to apportion the time billed for Plaintiff's Counter-motion for Summary Judgment from that billed for her opposition to Defendant's Motion for Summary Judgment, the Court RECOMMENDS that Dellera's and Bassett's hours be reduced by 10.94 and 1.7 hours, respectively.[7]

Plaintiff argues that the time spent on her Counter-motion to Amend and Opposition to Defendant's Motion to Strike Plaintiff's Counter-motion for Summary Judgment (Doc. # 80) is compensable because said counter-motion and opposition were "reasonable and necessary responses" to Defendant's Motion to Strike.  (Reply at 11.)  Plaintiff, however, fails to show that such time contributed to her ultimate victory in the lawsuit.  As mentioned above, Judge Ezra denied

---

[5] 5.0 (5/14/09) + 5.5 (5/15/09) + 4.0 (5/21/09) + 7.75 (5/22/09) + 4.25 (5/23/09) + 6.0 (5/25/09) + 1.25 (6/2/09) + 6.0 (6/3/09) + 4.0 (6/4/09) = 43.75. (Ex. A at 2-3.)

[6] 1.5 (5/14/09) + 1.0 (5/21/09) + 4.3 (5/23/09) = 6.8.  (Ex. C at 5.)

[7] This amounts to a 25% reduction.

17

Plaintiff's Counter-motion to Amend and granted Defendant's Motion to Strike. (Doc. # 87.)  Thus, the Court concludes that Plaintiff may not be compensated for time spent on her Counter-motion to Amend and Opposition to Defendant's Motion to Strike, and recommends that such time be deducted from her request. Dellera's and Bassett's billing entries for such time total 26.85[8] and 13.4[9] hours, respectively; however, some of said billing entries also include time spent on other work.  Because the Court is unable to ascertain the amount of time that was spent solely on Plaintiff's counter-motion and opposition, the Court RECOMMENDS that all time be excluded.  See A.F., 2008 WL 148909, at *5.

Lastly, Plaintiff argues that the time spent on her First Motion for Attorneys' Fees (Doc. # 89) is compensable because she incorporated that motion into the instant motion.  (Reply at 13.)  After reviewing Plaintiff's First Motion for Attorneys' Fees, the Court finds that Plaintiff incorporated significant portions of that motion into the instant motion.  The Court therefore concludes that Plaintiff may be compensated for time spent preparing her First Motion for Attorneys' Fees. The Court, however, concludes that Plaintiff may not be compensated for time

---

[8] 2.0 (6/4/09) + 1.5 (6/4/09) + 4.0 (6/5/09) + 3.0 (6/6/09) + 3.0 (6/10/09) + 1.6 (6/12/09) + 1.75 (6/12/09) + 5.0 (6/24/09) + 5.0 (6/25/09) = 26.85.  (Ex. A at 3-4.)

[9] 6.0 (6/3/09) + 0.7 (6/4/09) + 1.0 (6/6/09) + 0.7 (6/11/09) + 1.0 (6/16/09) + 1.5 (6/24/09) + 2.5 (6/25/09) = 13.4.  (Ex. C at 6.)

spent opposing Defendant's Motion to Strike Plaintiff's First Motion for

Attorney's Fees as Defendant's Motion to Strike was granted.  (Doc. # 118.)  In

addition, Plaintiff may not be compensated for time spent replying to Defendant's

Opposition to Plaintiff's First Motion for Attorneys' Fees as Plaintiff does not

contend that she incorporated said reply into her instant motion.  (Doc. # 103.)

Thus, the Court RECOMMENDS that Dellera's hours be reduced by 9.0 hours.[10]

 In accordance with the foregoing, the Court RECOMMENDS that

Dellera's and Bassett's hours be reduced by 46.79[11] and 21.4[12] hours, respectively.

B.   <u>Hourly rate</u>

 As to the reasonableness of the hourly rates sought, such rates should

reflect those prevailing in the community for similar work performed by attorneys

of comparable experience, skill, and reputation.  <u>See</u> <u>Webb v. Ada County</u>, 285

F.3d 829, 840 (9th Cir. 2002); <u>see also</u> <u>Tirona</u>, 821 F. Supp. at 636.  Here, Plaintiff

requests for Dellera and Bassett, the hourly rates of $350 and $280, respectively.

(Mot. at 12.)  As to Dellera, Plaintiff contends that the hourly rate of $350 is

reasonable because Dellera has litigated numerous civil cases in state and federal

---

[10] 1.5 (7/31/09) + 1.25 (8/1/09) + 1.5 (8/5/09) + 0.75 (8/5/09) + 0.5 (8/6/09)
+ 3.5 (8/6/09) = 9.0.  (Ex. A at 5.)

[11] 10.94 + 26.85 + 9.0 = 46.79.

[12] 6.3 + 1.7 + 13.4 = 21.4.

court.  (Dellera Decl. ¶ 5.)  In addition, Plaintiff submitted declarations from Stanley E. Levin and Carl M. Varady, each of whom have experience litigating IDEA cases, attesting that an hourly rate of $250 to $350 is reasonable for Dellera's services. (Levin Decl. ¶ 6; Varady Decl. ¶ 8.)

Defendant objects to Dellera's hourly rate of $350 on the ground that it is excessive.  (Opp. at 6-9.)  Defendant notes that attorneys who specialize in IDEA litigation have been awarded hourly rates of $185 to $285.  (Id. at 6.)  Defendant argues that while Dellera has experience in civil litigation, he lacks experience in litigation involving the IDEA.  (Id. at 7.)  In addition, Defendant argues that Levin's and Varady's declarations should be disregarded as the hourly rates they propose exceed those previously awarded, and such rates do not account for Dellera's inexperience in IDEA litigation.  (Id. at 7-8.)

The Court finds that based on the rates prevailing in the community, Dellera's hourly rate of $350 is unreasonable.  This hourly rate exceeds those previously awarded in this district to attorneys who specialize in IDEA litigation. The Court, however, recognizes that Dellera has considerable experience in civil litigation, some experience in IDEA litigation, and has served as the Hawaii Disability Rights Center's ("HDRC") Executive Director since April 1, 2009. (Dellera Decl. ¶¶ 2, 5.)  The Court therefore FINDS that an hourly rate of $275 is

reasonable for Dellera's services and RECOMMENDS that he be awarded such rate.

As to Bassett, Plaintiff contends that the hourly rate of $280 is reasonable because Bassett has litigated numerous IDEA cases and is the HDRC's senior staff attorney.  (Bassett Decl. ¶¶ 6, 7.)  Plaintiff submitted a declaration from Cynthia S. Nakamura, who has experience litigating IDEA cases, attesting that an hourly rate of $260 to $350 is reasonable for Bassett's services.  (Ex. D at 3.)

Defendant objects to Bassett's hourly rate of $280 on the ground that it is excessive.  (Opp. at 9-10.)  Defendant argues that Bassett lacks the experience of other IDEA attorneys who have been awarded hourly rates of $250 to $285.  (Id. at 9.)  Defendant argues that instead, Bassett should be awarded an hourly rate of $225, which he was recently awarded in a separate IDEA case.  (Id. (citing Dep't of Educ. v. Zachary B., Civ. No. 08-00499 JMS-LEK, slip op. at 10 (Dec. 31, 2009)).)

The Court finds that based on the rates prevailing in the community, Bassett's hourly rate of $280 is unreasonable.  This hourly rate exceeds a majority of those previously awarded in this district.  The Court recognizes that Bassett was recently awarded an hourly rate of $225 in a separate IDEA case; however, it appears that he was awarded such rate because he did not submit documentation

that he personally appeared as lead counsel in other IDEA cases in this district.

See Zachary B., slip op. at 10.  Here, Bassett submitted a declaration in which he

attests that, among other things, he appeared as lead counsel in approximately fifty

due process cases and is presently lead counsel in four due process proceedings,

two other IDEA appeals before this Court, and two IDEA appeals before the Ninth

Circuit United States Court of Appeals.  (Bassett Decl. ¶¶ 7, 10.)  Bassett also

attests that as the HDRC's senior staff attorney, he is responsible for supervising

the HDRC's litigation of IDEA cases.  (Id. ¶¶ 6, 14.)  Based on the foregoing, the

Court FINDS that an hourly rate of $275 is reasonable for Bassett's services and

RECOMMENDS that he be awarded such rate.

In accordance with the above, the Court RECOMMENDS that

Plaintiff be awarded a lodestar amount of $80,286.50, as set forth below:

|  | Hours | Rate | Lodestar |
|---|---|---|---|
| John P. Dellera | 143.16[13] | $275 | $39,369.00 |
| Matthew C. Bassett | 151.70[14] | $275 | $41,717.50 |
|  |  |  |  |
| Subtotal |  |  | $81,086.50 |
| Fees waived (travel) |  |  | $    800.00 |
|  |  |  |  |
|  |  | TOTAL | $80,286.50 |

---

[13] 189.95 - 46.79 = 143.16.

[14] 173.10 - 21.4 = 151.7.

<u>CONCLUSION</u>

For the foregoing reasons, the Court RECOMMENDS that Plaintiff's Second Motion for Attorneys' Fees be GRANTED IN PART and DENIED IN PART.  Specifically, the Court recommends that Plaintiff be awarded $80,286.50 in attorneys' fees.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, April 1, 2010.



/s/ Barry M. Kurren
United States Magistrate Judge

<u>B.T., by and through his Mother, Mary T. v. Department of Education, State of Hawaii</u>, Civ. No. 08-00356 DAE-BMK & Civ. No. 09-00059 DAE-LEK (Consolidated Cases); FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND RELATED TAXABLE EXPENSES BE GRANTED IN PART AND DENIED IN PART.